| **2nd Judicial District Court**<br>**Denver County, State of Colorado**<br><br>Court Address: Denver District Courthouse<br>1437 Bannock Street<br>Denver, CO 80202<br><br>**Plaintiff:** Debra Grosch<br><br>**v.**<br><br>**Defendant:** Liberty Insurance Corporation | DATE FILED: August 1, 2018 11:22 AM<br>FILING ID: 699F6311FB4D4<br>CASE NUMBER: 2018CV32839<br><br>▲ COURT USE ONLY ▲ |
|---|---|
| **Attorneys for Plaintiff:**<br>Attorney: Andrew M. Newcomb, #37032<br>Jennifer A. Milne, #46286<br>Samuel F. Mitchell, #51253<br>Address: Speights and Worrich, LLC<br>2149 South Holly Street, Suite 105<br>Denver, CO 80222<br>Phone Num.: (303) 662-8082<br>FAX Num.: (303) 662-8083<br>E-Mail: andrew@speightsfirm.com<br>jennifer@speightsfirm.com<br>sam@speightsfirm.com | Case Number:<br><br>Div.: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, Debra Grosch (hereafter, "Plaintiff"), by her attorneys, Speights and Worrich, LLC, respectfully submits the following Complaint against Defendant Liberty Insurance Corporation:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Debra Grosch is a citizen of and is domiciled in the City and County of Denver in the State of Colorado.

2. Upon information and belief, Defendant Liberty Insurance Corporation ("Defendant") is a foreign corporation organized under the laws of Illinois, with its principal place of business located at 2815 Forbs Avenue, Suite 200, Hoffman Estates, Massachusetts 60192. Defendant is authorized to do business in Colorado.

3. Defendant may be served with process upon its Registered Agent, the Corporation Service Company, at 1900 West Littleton Boulevard, Littleton, Colorado 80120.

4. This Court has jurisdiction over the subject matter of this action and the parties hereto.





5. Venue is proper in this Court pursuant to C.R.C.P. 98(c)(1) inasmuch as the real Property that is subject of this dispute is located in the City and County Denver, State of Colorado.

## GENERAL ALLEGATIONS

6. Plaintiff contracted with Defendant to provide homeowners' insurance coverage for her Property and personal Property situated therein.

7. Accordingly, Defendant issued to Plaintiff Policy Number H37-298-017389-70 (the "Policy").

8. The Policy insured Property located at 2670 West Bates Avenue, Denver, Colorado 80236-2813 (the "Property").

9. The Policy was in effect from June 27, 2016 to June 27, 2017 (the "Policy Period").

10. Plaintiff timely paid all policy premiums due to Defendant.

11. The Policy is a homeowners' policy that covers, *inter alia*, all risks of direct physical loss, damage, or injury to the Property, including Property damaged by hail and/or wind.

12. The Policy is a Replacement Cost Value ("RCV") policy.

13. On or around September 29, 2014, a hailstorm ( the "Incident") damaged the roof and other structures located at the Property.

14. Plaintiff submitted a claim with Defendant for hail damage on June 2, 2015, and Defendant assigned claim number 032104912 (the "Claim").

15. On June 2, 2015, Defendant's adjuster Adrian Fryxell inspected the Property, accompanied by a representative from Elite Restoration, Inc. ("Elite"), whom Defendant represented was a "preferred vendor" and could perform the repair and restoration work to Plaintiff's Property. Defendant determined that hail caused damage to the roof, gutters and some of the siding of the Property and prepared an estimate to repair the damage. Plaintiff did not sign a contract with Elite, as she was not informed that she had the right to choose her own contractor to perform the work. Elite simply initiated repair work.

16. In its initial estimate, Defendant determined that the RCV to repair the hail damage to the Property was $17,485.68, with an actual cash value ("ACV") of $15,095.38 and Defendant issued payment to Plaintiff in the amount of $14,098.88, which was calculated as the RCV amount less Plaintiff's deductible and the depreciation amount.

17. Upon information and belief, Defendant's estimate attempted to repair or replace only portions of the damaged Property at the Property, and also provided estimates for repair with materials of a lesser quality than the materials that were damaged by the hailstorm.

18. Elite performed some repair work to Plaintiff's Property, but the work was sub-par and failed inspection by the city and county inspector on five (5) separate occasions, August

13, 2015, August 18, 2015, May 17, 2016, July 15, 2016, July 16, 2016, January 15, 2017, and January 19, 2017.

19. On or about August 4, 2015, Elite sent an invoice to Plaintiff for the work performed, which totaled $20,367.01. This amount exceeded Defendant's RCV estimate. Elite issued an invoice for repairs in the sum of $20,367.01 with a remaining balance of $6,317.53.

20. Plaintiff advised Defendant that the work performed by Elite was inadequate and that it had not performed the full scope of work as identified in Defendant's initial estimate. Plaintiff further advised Defendant that Elite's invoice for its inadequate work exceeded the payments made by Defendant. Plaintiff continued to debate the scope of damage and cost of repairs with the Defendant.

21. Plaintiff attempted to obtain third-party estimates from other contractors, but could not obtain any estimates due to the complicated and insufficient work performed by Elite.

22. On February 19, 2016, Defendant sent a supplemental estimate to Plaintiff in the amount of $20,321.51, along with an RCV payment to Plaintiff in the amount of $5,226.13. Plaintiff had not yet made any request for supplemental payment from Defendant, despite Defendant's letter stating the same. Plaintiff advised Defendant that the contractor, Elite, continued to pursue her for the outstanding amounts it claimed were owed.

23. Elite reported submitting a final inspection form from a 3rd party inspector, Richard Boon, P.E., on July 13, 2016. No such inspection was filed with the city and county of Denver, and the form that was ultimately obtained from Mr. Boon contained several "items checked" that did not exist or were incomplete on the Plaintiff's Property.

24. Due to the extensive difficulty and delay Plaintiff experienced with Defendant and its "preferred contractor," Elite, Plaintiff tendered a claim to the Department of Regulatory Agencies ("DORA") and received an acknowledgment letter on October 7, 2016 and was assigned file number: 255520/JRM.

25. On April 17, 2017, DORA sent a letter to Defendant notifying it of the severe deficiencies and delay caused by its actions in failing to properly adjust the claim and/or monitor its "preferred vendor," Elite. DORA requested that Defendant permit an "unaffiliated contracting company or forensic engineer to inspect" Plaintiff's Property to resolve the outstanding issues.

26. On May 2, 2017, Defendant notified DORA that it retained a third-party engineer, Envista Forensics ("Envista"), to inspect the Property and prepare a report. Envista provided its report to Defendant on June 8, 2017., and the report identified substantial deficiencies in the repairs to Plaintiff's Property. See Exhibit "A," Envista Engineering Report.

27. On June 19, 2017, DORA requested Defendant to send out a company appraiser that was not Elite, as well as a new inspector other than Adrian Fryxell and asked Defendant to respond within 20 days.

28. On July 6, 2017, three days prior to the 20 day cutoff, Defendant asked for an extension to July 20, 2017 to respond to DORA.

29. On July 25, 2017, one of Defendant's Innovation Program Network vendors, Jenkins Restoration determined that the remaining RCV to repair the hail damage to the Property was $2,644.88.

30. On or about August 29, 2018 Defendant sent DORA a correspondence agreeing for the first time and without any new information from Plaintiff, to afford coverage for a complete roof replacement, new appropriately sized gutters, replacement of siding and additional hail related damage identified in the engineer report as well as the workmanship issues related to the repairs previously completed by Elite Restoration.

31. On September 28, 2017 DORA requested an update on the claim including a copy of the new repair estimate, proof of payment, a copy of the hygienist report and copies of all correspondence sent to Plaintiff pertaining to the inspections and latest estimate.

32. On October 5, 2017 Jenkins Restoration stated the work would be completed by a sub-contractor around "mid-November" 2017.

33. On October 12, 2017, Plaintiff signed Jenkins Restoration's work authorization to perform work on her Property. Jenkins did not complete the work on Plaintiff's Property.

34. Because of the continued delay and failure to properly complete the repairs to Plaintiff's Property, DORA requested an in-person meeting with agents for the Defendant, stating that "the Division expects that the appropriate decision makers attend this meeting and that there are concrete action plans agreed to that will bring this claim to an appropriate resolution."

35. On December 21, 2017, DORA sent Plaintiff correspondence confirming an inspection would occur in January of 2017 and requested additional roofer bids.

36. On December 21, 2017 Defendant confirmed an in-person meeting with DORA representatives to take place on January 17, 2017 at 10:00 a.m. Prior to this meeting, Defendant continued to assert that it was not responsible for a full roof replacement or other repairs arising out of the Incident beyond the estimates it provided to its contractors.

37. At the meeting with DORA, for the second time and without any new information from Plaintiff, Defendant agreed that the Incident caused substantial damage to the Plaintiff's Property sufficient enough to warrant a full roof-replacement, as well as repair/replacement of other parts of the Property. This was over three (3) years after the Incident.

38. Plaintiff has never received an estimate of repairs from Defendant from the initial inspection through Defendant's 2017 total roof replacement decision. Upon information and belief, Defendant made all payments to contractors directly without providing payment information to Plaintiff.

39. Although Defendant accepted a full roof replacement in 2017, it denied other portions of Plaintiff's claim for which she has incurred economic damages in seeking repair.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

40. Plaintiff hereby incorporates paragraphs 1 through 38 of her Complaint as if fully set forth herein.

41. The Policy creates a contract of insurance between Plaintiff and Defendant.

42. The Policy is a valid and enforceable contract between Plaintiff and Defendant.

43. By its actions, as described above, Defendant breached the contract of insurance.

44. Plaintiff has substantially complied with all of her obligations under the Policy.

45. As a direct and proximate result of Defendant's breach, Plaintiff has incurred damages and is entitled to relief in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Bad Faith Breach of Insurance Contract)**

46. Plaintiff hereby incorporates paragraphs 1 through 45 of her Complaint as if fully set forth herein.

47. Defendant owed duties to Plaintiff under the Policy's implied covenant of good faith and fair dealing, wherein it covenanted that it would, in good faith, and in the exercise of fair dealing, deal with Plaintiff fairly and honestly, faithfully perform its duties of representation, and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's rights to receive the Policy's benefits.

48. Defendant acted unreasonably and breached its duties of good faith and fair dealing by its actions, which included, without limitation, the following unreasonable acts:

   a. Failing to properly investigate and evaluate Plaintiff's claims for Policy benefits;
   b. Attempting to repair and replace damage to the Property with inferior materials;
   c. Failing to pay Plaintiff's the full benefits owed under the Policy;
   d. Failing to pay amounts under the Policy in a timely manner;
   e. Failing to effectuate a prompt, fair, and equitable settlement of Plaintiff's claims;
   f. Failure to give equal consideration to Plaintiff's rights and interests as it has given its own interests;
   g. Depriving Plaintiff of the benefits and protections of the contract of insurance;

h. Compelling Plaintiff's to institute litigation in order to recover amounts due under the Policy; and
i. Other conduct to be revealed through discovery.

49. As a direct and proximate result of Defendant's bad faith breach of the contract of insurance, Plaintiff had incurred damages and is entitled to relief in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**(Violation of C.R.S. § 10-3-1115 and Relief Pursuant to § 10-3-1116)**

50. Plaintiff hereby incorporate paragraphs 1 through 49 of her Complaint as if fully set forth herein.

51. C.R.S. § 10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

52. Plaintiff is first-party claimant under C.R.S. § 10-3-1115.

53. Defendant has delayed and denied resolution of Plaintiff's Claim without a reasonable basis within the meaning of C.R.S. § 10-3-1115.

54. C.R.S. § 10-3-1116 provides that a first-party claimant whose claim for payment of benefits has been unreasonably delayed or denied by an insurer may bring an action to recover reasonable attorneys' fees and court costs and two times the covered benefit.

55. Because Defendant's actions, as described above, violate C.R.S. § 10-3-1115, Plaintiff is entitled to the relief provided in C.R.S. §10-3-1116.

WHEREFORE, Plaintiff, Debra Grosch respectfully requests that judgment be entered in her favor and against Defendant Liberty Insurance Corporation as follows:

a. For compensatory damages, both economic and non-economic, in amounts to be proved at trial;
b. For double damages pursuant to Colorado statute;
c. For all prejudgment interest, statutory or moratory, and post-judgment interest allowed by law;
d. For reasonable attorneys' fees and costs of suit herein; and
e. For such other and further relief as this Court deems just and proper under the circumstances.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 1, 2018.

Respectfully Submitted,

*/s/Andrew M. Newcomb*
Andrew M. Newcomb, #37032
Jennifer A. Milne, #46286
Samuel F. Mitchell, #51253

ATTORNEYS FOR PLAINTIFF DEBRA GROSCH

*In accordance with C.R.C.P. 121 § 1-26(9), a printable copy of this document with electronic signatures is being maintained at the office of the filing party's counsel and is available for inspection by other parties or the court upon request.*